[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
Pursuant to an Order entered on February 12, 1992, the Superior Court, the Honorable Robert D. Krause presiding, approved the application of Maurice C. Paradis, then Director of the Department of Business Regulation, as Receiver of Heritage Loan and Investment Company ("Receiver") to have the Court appoint a master with respect to claims relating to "off-line" deposit accounts at Heritage Loan and Investment Company ("Heritage"). See the Order dated February 12, 1992. As a result of said Order, William J. McAtee, Administrator/Master of the Superior Court was appointed as Master in the above-captioned receivership.
The Order provided that the Master:
 "is appointed . . . for the purpose of hearing and determining the claims filed with the receiver relating to `off-line' deposit accounts, which claims shall be deemed to include claims to funds evidenced by handwritten or typewritten savings passbooks, claims to funds alleged to have been withdrawn without the depositor's authority to do so, claims to funds evidenced by safekeeping receipts, and claims to any funds which are not verifiable on the computer records maintained by Heritage Loan and Investment Company;"
 "That Master McAtee shall have all of the powers of a Justice of the Superior Court with respect to the hearings and determination of `off-line' deposit account claims, including, without limitation, those powers enumerated in Rhode Island General Laws § 8-2-11.1 (1985 Reenactment)."
R.I.G.L. 8-2-11.1 provides, in pertinent part, that:
 "Such administrator/master may be authorized: (1) To regulate all proceedings before him; (2) To do all acts and take all measures necessary or proper for the efficient performance of his duties; (3) To require the production before him of books, papers, vouchers, documents and writings; (4) To rule on the admissibility of evidence; (5) To issue subpoenas for the appearance of witnesses, to put witnesses on oath, to examine them and to call parties to the proceeding and examine them upon oath;"
In accordance with the above, a hearing was held on the above referenced claim on November 1 and November 3, 1993. At the conclusion of the hearing, the parties submitted Post-Hearing Memoranda.
Claimant was refused his demand to withdraw Forty Thousand Dollars ($40,000) from Heritage Account No. 02-00-1117-89 after the closure of the institution in 1990. Refusal was based on no record of the account being found in the records of the institution even though Claimant presented a Heritage passbook bearing the above number and carrying the requested balance. Because of this, Claimant is before this Court to pursue his claim to an "off-line" Heritage Account.
Claimant has testified that he had a number of different accounts at Heritage, both business as well as personal, and had dealt with Joseph Mollicone, Jr. As to the account that is the subject of the instant case, Claimant has produced a passbook showing deposits on four different dates that by March 21, 1990 totaled the $40,000 in question. None of these deposits are recorded in the computer records of Heritage. Furthermore, all the entries in said passbook are handwritten.
However, on the dates in question, the cash settlement sheets for the Atwells Avenue branch of Heritage do reveal notations that Claimant points to as evidence of the claimed deposits. On November 17, 1989 the date of an alleged Five Thousand Dollar ($5,000) deposit there is a notation of "Joe B. 5,000" recorded in red. Later, on November 22, 1989, the date of an alleged Twenty Thousand Dollar ($20,000) deposit there is a notation that the former deposit was increased to "Joe B. 25,000". Again, on November 27, 1989 the date Claimant testified that he deposited an additional Five Thousand Dollars ($5,000) the sheet was increased to "Joe B. 30,000".
From this point, the settlement sheets, as so much else in these claims, yields far more heat than light on the proceedings. On November 28, 1989 the 30,000 in red for "Joe B." was removed in favor of an amount of 1,800 and on March 21, 1990, the date of the final claimed deposit of Ten Thousand Dollars ($10,000) the "plug figure" is decreased by $12,643.06. The "plug figure" on the cash settlement sheets represented money that should have been in Heritage but for some reason was not. Said plug figure is not a device in accord with generally accepted accounting principles but was used at Heritage to balance out the daily settlement sheets. This plug figure at Heritage therefore represented a "bank within a bank", an increase in the figure represents money that had gone out of Heritage without a corresponding withdrawal, a decrease means that money came into Heritage and was not evidenced by a deposit or loan payment.
Claimant has testified that he is in fact the "Joe B." referred to on the settlement sheets and that he was known by that term in order to distinguish him from other members of his family.
The Receiver claims that Claimant does not hold a deposit as defined by 12 U.S.C. § 1813 (1), which states in pertinent part as follows:
 1) The unpaid balance of money or its equivalent received or held by a bank or savings association in the usual course of business and for which it has given or is obligated to give credit, either conditionally or unconditionally, to a commercial, checking, savings, time, or thrift account, or which is evidenced by a certificate of deposit, thrift certificate, investment certificate, certificate of indebtedness, or other similar name, or a check or draft drawn against a deposit account and certified by the bank or savings association, or a letter of credit or a travelers check on which the bank or savings association is primarily liable. . .
 3) money received or held by a bank or savings association, or the credit given for money or its equivalent received or held by a bank or savings association, in the usual course of business for a special or specific purpose, regardless of the legal relationship thereby established, including without being limited to, escrow funds, funds held as security for an obligation due to the bank or savings association or others (including funds held as dealers reserves) or for securities loaned by the bank or savings association, funds deposited by debtor to meet maturing obligations, funds deposited as advance payment on subscriptions to United States Government securities, funds held to meet its acceptances or letters of credit, and withheld taxes; Provided, that there shall not be included funds which are received by the bank or savings association for immediate application to reduction of indebtedness to the receiving bank or savings association, or under condition that receipt thereof immediately reduces or extinguishes such indebtedness.
Receiver argues that Claimant was not depositing funds in the usual course of business but rather had entered into a special relationship with Mr. Mollicone in order to hide funds from his ex-wife. In fact, Claimant admitted in his testimony that marital problems were a concern of his at the time that the account was opened.
Claimant counters however that the savings account qualifies as an "insured deposit" defined under 12 U.S.C. § 1813 (3) as "money received by a bank . . . for a special or specific purpose, regardless of the legal relationship thereby established, including without being limited to escrow funds,funds held as security for an obligation due to the bank. . ." (emphasis added). In fact, in the instant case, the passbook was being held as security for the payment of notes due to Heritage by the Claimant.
After a careful review of the evidence as well as consideration of the testimony, the Court is not convinced that Claimant sought a relationship with Heritage outside of the usual course of business although it appears that is in fact what resulted. The Court has found insufficient evidence to prove that Claimant only sought to hide funds from a former wife rather than deposit funds into Heritage.
This Court finds that Claimant has a valid priority claim against the Heritage Receiver in the amount of Forty Thousand Dollars ($40,000) plus interest. Counsel will prepare an order in accordance with this decision.